2009 ME 33

**STATE of Maine**

v.

**Dale Richard WEEKS.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 22, 2009.

Decided: March 24, 2009.

---

Nicholas H. Walsh, Esq., Nicholas H. Walsh, P.A., Portland, ME, for Dale Richard Weeks.

Stephanie Anderson, District Attorney, Michael Madigan, Asst. Dist. Atty., Portland, ME, for the State of Maine.

Panel: CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

LEVY, J.

[¶ 1] This case involves the construction of a statute and regulation intended to protect the breeding stock of Maine's lobster fishery. Dale Richard Weeks was convicted after a bench trial in the District Court (West Bath, *J.D. Kennedy, J.*) for having possessed four "female lobster[s] marked with a v-notch ... or any female lobster that is mutilated in a manner that could hide or obliterate that mark" (Class D), 12 M.R.S. § 6436(1)(B) (2008). He contends that his possession of the lobsters did not fall within this prohibition because each lobster showed evidence that it had regenerated through the molting process. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Weeks has lobstered out of Harpswell since 1974. Department of Marine Resources Warden Clint Thompson received complaints that Weeks was keeping lobsters in violation of lobster conservation provisions including the v-notch program. The program provides that when an egg-bearing female lobster is caught, it must be marked with a v-shaped notch in the right rear middle flipper, and released. *See* 5 C.M.R. 13 188 025–7 § 25.15 (2008). It is a Class D crime to "take, transport, sell or possess" a lobster showing a v-notch, or one that has been "mutilated in a manner that could hide or obliterate that mark." 12 M.R.S. § 6436(1)(B). Lobsters have five rear flippers. For conservation purposes, the condition of the flipper that is to the immediate right of the middle flipper when the lobster is viewed from the rear (hereinafter, right center flipper), is relevant when determining whether the lobster may be kept.[1]

---

1. The appropriate flipper to be v-notched, the right center flipper, is illustrated in figure 18 in the Maine Department of Marine Resources's *Guide to Lobstering*, http://www.maine.gov/dmr/guidetolobstering, of which the trial court took judicial notice, as follows:

[¶ 3] On December 14, 2007, Warden Thompson met Weeks's boat as it returned to the docks in Harpswell, and, along with two other officers, inspected the catch. Out of the hundreds of lobsters in Weeks's possession, the officers identified six they believed had mutilated right center flippers and were possessed in violation of section 6436. They also identified a seventh lobster with a gouged eye socket, which would prevent accurate measurement. Title 12 M.R.S. § 6431(4) (2008) makes it "unlawful to possess any lobster ... which is mutilated in a manner which makes accurate measurement impossible."

[¶ 4] Weeks did not contest the charge of possessing a lobster with a mutilated eye socket in violation of section 6431(4). As to the remaining six lobsters, a nonjury trial was held. Weeks did not dispute that he was in possession of the lobsters or that their right center flippers had been damaged. He argued that the possession of the lobsters was not a violation of section 6436 because the damaged flippers had regenerated after molting, and based on Bureau of Marine Patrol policy, it is not a violation of the statute to possess a lobster with a mutilated right center flipper that has subsequently regenerated.[2]

Flipper to be notched

Fig. 18

[¶ 5]   At the close of the State's case, the trial court granted Weeks's motion for judgment as a matter of law with respect to two of the six lobsters.  Following the close of all of the evidence, the court issued a detailed written decision in which it found Weeks guilty with respect to the remaining four lobsters, fining him $250 for the four violations of 12 M.R.S. § 6436, and $100 for the single violation of section 6431.

[¶ 6]   Weeks filed a motion to amend the judgment, seeking a specific finding "that each of the lobsters the court deems 'mutilated' for the purpose of Title 12 M.R.S. § 6436 had a 'naturally regenerated flipper.'"  The court issued an amended decision finding that despite evidence of regeneration, the lobsters had been mutilated at some point in time, and that the statute prohibits possession of any female lobster that has a damaged right center flipper that could have once been v-notched.

2.   Weeks testified that he had previously been told by marine patrol officers that possessing lobsters with regenerated right center flippers was legal, and he submitted evidence at trial of a Bureau of Marine Patrol policy that states: "For the purpose of this policy, a naturally regenerated flipper is considered legal."  Bureau of Marine Patrol, Ch. 5/Policy 2.A(3).  He explained that when undamaged, a lobster's flippers have cilia or small hairs on their trailing edge.  When cut off, the flipper will not show the presence of cilia.  However, damaged lobster flippers regenerate after molting, and the presence of cilia on a damaged flipper is evidence that the flipper has molted and regenerated.  Weeks argued that the presence of cilia on the "haired out" right center flippers as seen in the State's exhibits established that the flippers had regenerated, and that possession of those lobsters was therefore legal.

3.   Title 12 M.R.S. § 6436 (2008) provides in pertinent part:

   **1.   Egg-bearing and v-notched lobsters.**  A person may not take, transport, sell or possess:

   **A.**   Any lobster that is bearing eggs;  or

## II.   LEGAL ANALYSIS

[¶ 7]   The question presented is whether section 6436 prohibits possession of lobsters with naturally regenerated right center flippers that bear evidence of having previously been mutilated.  After (A) reviewing the relevant statutory and regulatory background;  (B) reviewing the District Court's decision;  and finally, (C) undertaking our own analysis, we conclude that section 6436 does prohibit possession of the lobsters in question, and we affirm the trial court's judgment.

### A. Statutory and Regulatory Background

[¶ 8]   "A person may not take, transport, sell or possess ... [a]ny female lobster marked with a v-notch in the right flipper next to the middle flipper or any female lobster that is mutilated in a manner that could hide or obliterate that mark."  12 M.R.S. § 6436(1)(B).[3]   The

   **B.**   Any female lobster marked with a v-notch in the right flipper next to the middle flipper or any female lobster that is mutilated in a manner that could hide or obliterate that mark.  The right flipper is determined when the underside of the lobster is down and its tail is toward the person making the determination.

   . . . .

   **4.   Prima facie evidence.**

   . . . .

   **B.**   Any lobster whose right flipper is v-notched or mutilated in a manner which could hide or obliterate such a mark shall be prima facie evidence that the lobster is a v-notched female lobster.

   **5.   Penalty.** Possession of lobsters in violation of this section is a Class D crime, except that in addition to any punishment that may be imposed under Title 17–A, Part 3, the court shall impose a fine of $50 for each violation and, in addition, a fine of $100 for each lobster involved that is bearing eggs and a fine of $50 for each female lobster involved that is marked with a v-notch.

statute further provides that "[a]ny lobster whose right flipper is v-notched or mutilated in a manner which could hide or obliterate such a mark shall be prima facie evidence that the lobster is a v-notched female lobster." *Id.* § 6436(4)(B). Section 6436 is a strict liability crime, 12 M.R.S. § 6204 (2008), which does not require proof of "a culpable mental state element with respect to any of the elements of the crime." 17–A M.R.S. § 34(4–A) (2008).

[¶ 9] The relevant Department of Marine Resources regulation mandates the practice of v-notching and explains that the v-notch protection extends to female lobsters that bear a v-notch, as well as female lobsters that are "mutilated in a manner, which could hide, obscure or obliterate such a mark." 5 C.M.R. 13 188 025–7 § 25.15. The regulation, like the statute, does not exempt from its operation lobsters with naturally regenerated right center flippers. It provides:

**Section 25.15  V-notching Lobsters**

1.  Mandatory V-notching Requirement

All lobster fishers are required to v-notch all egg bearing female lobsters caught in the process of lobstering.

2.  Zero Tolerance of V-notching

V-notched female lobster means any female lobster bearing a v-shaped notch of any size in the flipper next to and to the right of the center flipper as viewed from the rear of the female lobster. V-notched female lobster also means any female, which is mutilated in a manner, which could hide, obscure or obliterate such a mark. The flipper right of the center flipper will be examined when the underside of the lobster is down and its tail is toward the person making the determination.

*Id.*

[¶ 10] The Bureau of Marine Patrol has issued a policy manual to assist marine patrol officers in determining which lobsters are illegal to possess. In addition to describing v-notched and mutilated lobsters (with illustrations), the policy manual states, "For the purpose of this policy, a naturally regenerated flipper is considered legal." Bureau of Marine Patrol, Ch. 5/Policy 2.A(3).

**B.  Trial Court's Decision**

[¶ 11] The trial court determined that the statute prohibits possession of lobsters with evidence of past mutilation to the right rear flipper, regardless of the presence or absence of evidence of regeneration. The court reasoned:

A lobsterman who takes and keeps a female lobster that has a damaged right center flipper that *could* have once been v-notched does so at his peril. The statutes create a strict liability situation. In fact, to construe them otherwise would be to create a loophole so large that the effectiveness of the entire v-notching program could be eviscerated.

The language of DMR Policy 2A(3), which the court determines to be ambiguous on its face, is such as to create confusion in the mind of a conscientious lobsterman as to which lobsters may or may not legally be kept. However, as a matter of law, the court determines that language to be legally ineffective, as it creates an exception that is not authorized by the express language of the statute. However, even if it is legally ineffective, a Defendant can make a facially persuasive argument that the policy is so confusing that fundamental fairness should estop the state from holding her or him liable, especially in light of the "beyond a reasonable doubt" standard required in criminal prosecutions.

However, more specific and quite clear publicly available materials place a

lobster licensee on explicit notice of precisely what is required, of what is prohibited, and of the fact that this law creates a strict liability situation. Accordingly, the facially persuasive argument that a conscientious lobsterman can be lured into the commission of an unwitting criminal act fails on closer examination.

The Department's policy, as fully articulated, is consistent with the statute, which creates a strict liability situation, and in fact must do so if the underlying legislative purpose—conservation of fertile female lobsters—is to be achieved.

[¶ 12]  In so concluding, the court took judicial notice of materials on the Department's web site entitled "Guide to Lobstering in Maine," which explain that while possession of clearly v-notched or mutilated lobsters is illegal, possession of a female lobster with a right center flipper damaged by a natural occurrence is also illegal.[4]

## C.   Legal Analysis

[¶ 13]  Weeks contends that the trial court erred in its construction of section 6436 because the Legislature intended to prevent possession of freshly mutilated v-notched lobsters, not the possession of lobsters with long-healed injuries.  He asserts that the plain meaning of "mutilate" in section 6436(1)(B) forbids the possession of a lobster whose flipper has been removed to a degree sufficient to obscure a v-notch, and which remains removed at the time of possession, not one with a regenerated flipper.  He cites definitions of "mutilate" from *Webster's Third New International Dictionary of the English Language Unabridged* 1493 (2002): "**1:** to cut off or permanently destroy a limb or essential part of ... [or] **2:** to cut up or alter radically so as to make imperfect," and argues that a regenerated flipper does not fit either definition.

[¶ 14]  Weeks alternatively argues that if the statute is deemed ambiguous, both the legislative history and the agency interpretation of the statute weigh in favor of construing it to exclude possession of lobsters with regenerated flippers.  He asserts that because the statute is ambiguous, we should defer to the statement in the Bureau of Marine Patrol's manual that "[f]or the purpose of this policy, a naturally regenerated flipper is considered legal." Bureau of Marine Patrol, Ch. 5/Policy 2.A(3); *see also S.D. Warren Co. v. Bd. of Envtl. Prot.*, 2005 ME 27, ¶ 4, 868 A.2d 210, 213 (stating administrative agency's interpretation of a statute it is charged with administering is to be given deference).

[¶ 15]  The State contends that defining mutilate to mean only "cut off" is contrary to the plain meaning of section 6436 and would undermine its purpose of protecting the breeding stock of the lobster fishery. That purpose, the State asserts, is achieved only if the statute is construed so as to prohibit possession of female lobsters that have been v-notched, as well as those that have been mutilated in a manner that could hide or obliterate that mark.  Thus, a regenerated right center flipper that

---

4.  This, the court determined, resolved any confusion about whether naturally regenerated lobsters may legally be possessed: "Had the ambiguous text of DMR Policy 2A(3) caused any confusion in Mr. Weeks's mind, or in the mind of any lobsterman exercising due care in attempting to determine 'what the State commands or forbids,' a brief look at the most specific and broadly available state publication should have resolved any reasonable confusion."  The court ultimately found the language of the Department's policy to be ambiguous, but legally ineffective, and that "more specific and quite clear publicly available materials place a lobster licensee on explicit notice of precisely what is required, of what is prohibited, and of the fact that this law creates a strict liability situation."

bears evidence that it was previously mutilated in a manner that could hide or obliterate a v-notch falls inside the statute's ambit, while a regenerated right center flipper that bears no such evidence falls outside that ambit.

[¶ 16] The trial court's construction of section 6436 to apply to lobsters with regenerated right center flippers that show evidence of mutilation is consistent with the statute's plain meaning. As previously noted, mutilate means both "to cut off or permanently destroy a limb or an essential part of," and also "to cut up or alter radically so as to make imperfect." *Webster's Third New International Dictionary* at 1493. Mutilation may thus take the form of a flipper that is entirely cut off, or a flipper that is partially cut off or altered. The statute and regulation unambiguously prohibit possession of a female lobster that is mutilated in a manner that could hide or obliterate a v-notch, whether the mutilation takes the form of the right center flipper being totally cut off, partially cut off, or altered. The statute, whether read alone, or in conjunction with the regulation, is not ambiguous.[5]

[¶ 17] That the Bureau of Marine Patrol policy manual states "a naturally regenerated flipper is considered legal" does not alter the preceding conclusion. The statute does not prohibit possession of a female lobster with a regenerated flipper. The statute only operates to prohibit possession of a female lobster with a flipper that has a v-notch or is mutilated. Both the statute and rule are neutral as to whether the flipper is the lobster's original flipper or a naturally regenerated flipper. By providing that "a naturally regenerated flipper is considered legal," the manual suggests that evidence that a lobster has molted and the regenerative process has occurred is not, in itself, indicative of whether mutilation has occurred that would render the lobster unlawful to possess.

[¶ 18] Weeks's position that the manual provision is intended to establish that female lobsters with regenerated right center flippers are excluded from the protections of the v-notch program is difficult to embrace. That approach would be in direct conflict with the program's overriding purpose of protecting the breeding stock of the lobster fishery. If the authors of the policy manual in fact intended to suggest such an expansive exclusion, we would disregard their guidance as inconsistent with the unambiguous statute and regulation that are the controlling law.

[¶ 19] To summarize, it is a violation of section 6436(1)(B) to take, transport, sell or possess a lobster that has a right center flipper that bears evidence that it has been or ever was v-notched or mutilated in a manner so as to hide or obscure a v-notch, regardless of whether the right center flipper also bears evidence of regeneration. It is not a violation of section 6436(1)(B) to take, transport, sell or possess a lobster with a right center flipper showing signs of regeneration, but

---

5. For these reasons, we also reject Weeks's additional arguments, including his legislative history analysis and his assertion that section 6436 is unconstitutionally vague because it creates uncertainty as to whether the prohibited conduct includes possession of a lobster with a naturally regenerated flipper. Criminal statutes must define the offense with sufficient definiteness so that ordinary people can understand what conduct is prohibited. *State v. McLaughlin*, 2002 ME 55, ¶ 9, 794 A.2d 69, 72. In this instance, an ordinary person who reads section 6436 should understand that it is a violation to possess a female lobster bearing a right center flipper that is partially cut off or altered so as to hide or obliterate a v-notch, and that it is of no consequence whether the flipper is the lobster's original flipper or a regenerated flipper.

that bears no evidence of a v-notch or mutilation to hide or obliterate a v-notch.

■ [¶ 20]  The four lobsters at issue bear evidence of regeneration, but they also bear evidence that their right center flippers had been mutilated in a manner so as to hide or obliterate a v-notch.  The trial court did not err in finding beyond a reasonable doubt that all four lobsters were taken in violation of the v-notch law.

The entry is:

Judgment affirmed.